Ladies and gentlemen of the court, honored counsel, aloha, welcome. I'm Michael Glenn. I represent the Oklevueha Native American Church of Hawaii, Incorporated, and Michael Rex Raging Bear Mooney, the plaintiff's appellate in this case. May it please the court, the late, great Bill Hicks once said, the war on drugs is a war on civil rights. Don't let anyone ever tell you otherwise. Who's Bill Hicks? Bill Hicks is an American satirist, your honor. He's deceased. Michael Rex Raging Bear Mooney would take that a step further, and he would say that the war on drugs is a war on his very spiritual identity and cultural existence. Michael Rex Raging Bear Mooney is a medicine man, and I would say that it's an honor to have a shaman as a client. Not very often do shamans come before a federal court seeking help, but this is one of those cases. Cannabis has been around for thousands of years, prehistory. Before man learned to write, he learned of the plant. But the propaganda against the plant has only been about 75 years in existence. That means more than 98 percent of human generations in the last 5,000 years have only known cannabis as a plant capable of helping them. You know, I appreciate your statements, but why don't you move to the issues in this case? Certainly, your honor. The issues, the questions presented on appeal. First, does RFRA, the Religious Freedom Restoration Act, require an arrest before you can seek relief under it? Obviously, and almost unopposed from counsel, is the answer is no. It does not require an arrest. However, the lower court in this case almost predetermined that an arrest had to have occurred, or they make some vague reference to the words threat of arrest. And as we've briefed, there's no such thing. Has the CSA been enforced against your client since the one-time seizure that occurred here? Well, your honor, when you say enforced since, I would argue that yes, it was enforced that time. And of course, the lower court argued that it was a pre-enforcement challenge. So I'm glad your honor acknowledges the fact that the initial seizure of the cannabis wasn't indeed an enforcement of the Controlled Substance Act. But to answer your question, no, Mr. Mooney has not had any cannabis seized since then. And no, no member of the church, as I know of, at least the Church of Hawaii Incorporated, has been enforced. However, the Native American church on Kauai, as I understand it, was recently raided and had peyote confiscated, as well as a cannabis-consuming church on the big island of Hawaii known as the Hawaii Cannabis Ministry. In our briefing or in our trial, we mentioned that it was raided. Since then, your honor, and forgive me if any of you were on the case, the Ninth Circuit Court of Appeals has ruled that Roger Christie, the pastor in that church, is such a danger to the community because he advocates the religious use of cannabis and distributes it to his church members, that he's held without bail and his trial hasn't even occurred yet. And this has been going on almost two years. So active enforcement of the CSA occurs, clearly. Active enforcement against religions that consume cannabis occurs. And active enforcement against the appellant in this case occurred. For the district court to argue that this was a pre-enforcement challenge missed the point that the cannabis was seized and refused to be returned. They also missed the point by saying, well, because the government destroyed the cannabis in question. What was the date of the seizure then, now? It's back in 2006 or 4? Based on our presentation of facts, your honor, we put that Mr. Mooney has recently received cannabis intended for the NAC seized from FedEx by United States Drug Enforcement. And I believe the recently in that case would have been July of the year 2009, your honor. It's not certain as the actual date as to when it was seized. I know only we knew from the remaining evidence of the shipping label when it was shipped. But we do know that after the suit was brought, while it was in possession of the government, they decided to destroy it. So they decided to seize and destroy the evidence at issue in this case. And when I say evidence, it doesn't mean it's a criminal prosecution, but it is the subject matter. So it was in 2009 when it was seized? Yes, your honor. So have your clients been managing to practice their religion since then? It depends on what you mean by the word practice. If you mean they secretly have to consume cannabis, unable to tell anyone in the world about their use because it is determined to be illegal and they can not only be arrested. Actually, I don't mean that. What I mean is using cannabis without penalty. When you say without penalty, once again, as long as they don't tell anyone, then they're not going to be punished. All religions require members. I'm just asking, have they been able to do that without penalty? Your honor, as made clear, Mr. Mooney consumes cannabis daily, every day. So the fact that he hasn't been arrested should be enough for your honor to understand that yes, daily his use of cannabis hasn't resulted in him being arrested. But that's not the issue here. The issue here is does a church have to live like criminals? Do they have to be branded criminals? Do they have to live in fear of arrest? Do they have to live in fear of having everything they own seized by the government in a civil matter that's not even criminal because of their sacrament of choice? And the answer is of course not. That's what religious freedom restoration does. It allows you to petition the government and say your application of the Controlled Substance Act on us for the cannabis sacrament that we use significantly burdens our free exercise and we are seeking relief. And what other avenues are open to your client besides applying to the district court for an injunction and declaratory relief? I would argue... Do you petition to the government for an exemption from the regular CSA rules? I would argue no, your honor. But it seems that you can. That's a red herring because accordingly it would seem that we could cultivate hemp in America also because every other industrialized nation does. But our government is so anti-cannabis. They are so hung up on the conspiracy against marijuana that we won't even allow farmers to grow industrial hemp, non-psychoactive because of their interpretation of the Controlled Substances Act allows no use, zero use. Now, your honor, as far as the religious exemption that you're talking about, he considers that to be a waste of time and effort. Every church that has ever sought to use a controlled substance for religious purposes has received nothing but opposition from the government. Have they all been denied? No, your honor. Some have been granted. The United States Supreme Court unanimously granted the significant case in this, the Ocentra case, in which the Holaska using church decided after it had their sacraments seized that they're not going to take it anymore. They asked for it back, it wasn't returned, so they brought suit. No one ever required them to file for an application for an exemption. And, your honor, if the government were inclined to grant the objection, they shouldn't be in court fighting a request to use it. Well, that doesn't necessarily follow, but does this raise a failure to exhaust issue at all? Not at all, your honor. Like I said, if the government had any inkling of we would only grant it if they ask, then maybe you're right. What you're saying is there's nothing there to exhaust. Every attempt to even reschedule cannabis that has ever been done has been denied. Mr. Glenn, there's a very good microphone. Oh, I'm sorry, I'm a loud person. Okay, well, if you could just calm down and lower your voice, I'd appreciate it. My pleasure. Go ahead. So the first question, does RFRA require an arrest? Of course not. So you ask yourself, what else is Mr. Mooney to do? He says, I use cannabis in the same way I use peyote, as a non-drug. Now, that's an important word that I want each of your honors to understand, non-drug. I don't think you're going to hear it from the government in this case, because they don't like to acknowledge that such a thing exists. But it's true. It exists in the Code of Federal Regulations regarding how Native Americans use their peyote. They don't abuse a drug. They don't distribute a narcotic. They have a non-drug, sacramental use of a controlled substance. The same as cannabis. I want to ask you about the RFRA and whether, in your view, it contains a clear waiver of sovereign immunity for money damages. It does not, Your Honor. And we're not seeking money damages. When we're talking about appropriate remedy under RFRA, we're left with that. Congress didn't say money damages, but they didn't rule it out. What they said was the appropriate remedy. So each case hinges on its own merits. Now, in this case, after the government destroyed the cannabis, the lower court did a little bit of legal jujitsu, if you would. And without anyone asking, especially not briefing the issue, the court said, well, I would be able to order the cannabis to be returned, but since it was destroyed, I could only order it to be replaced. I'm not going to be ordering that they return you any value of it because that would be money and sovereign immunity. But for some reason, the lower court decided a wholly fungible product such as cannabis. Now, when I say wholly fungible, those are the words of the government. In the lower court, they called it fungible. And we all know what fungible means, replaceable. So wholly fungible means completely interchangeable. A wholly fungible product like cannabis, the judge in the lower court reasoned, because there's no testimony as to the quality of that cannabis, and cannabis varies by quality, I wouldn't feel comfortable ordering the government to return any cannabis to the church because there's no guarantee they'd get as good a quality herb as what was taken. Now, as I mentioned, that was never briefed by us. We'd be happy or the church would be happy with just an order saying return the cannabis. We don't even expect the government to do it. They've destroyed it. Even if it's replacement cannabis and it's never given to the church, we'd be happy. It's more of a symbolic victory we're seeking. But the lower court was seeking a way to get this case out of the courtroom. They didn't want it to even go to trial. So the court realized that because I can't guarantee the cannabis that would be replaced is of the same quality as that was taken, I'm going to be able to order nothing. And if I can order nothing, the case is dismissed. But, Your Honor, we would argue that we don't have to get to the point of, is replacement of the fungible product cannabis an appropriate remedy under RFRA? We should be able to get to the main issues at trial, Your Honor, the injunctive and declaratory relief. Not, well, because Mr. Mooney wasn't arrested, you're not ripe, you don't have standing. Your Honor, we would argue that he would have standing even if the cannabis wasn't seized. Even if they didn't seize anything from him, they have a right to come to court saying our religion is being burdened. Please help us. Now, when you ask, have they practiced their religion? And I was explaining, yes, they consume the cannabis, but no, they haven't practiced their religion. If anyone in this room was in a religion that by mere saying, I consume cannabis on a daily basis subjects them to arrest, they're not going to go around saying it very much. They're not going to go out and advertise anywhere saying, here's our church, come join us, because all they're really doing is saying, hello DEA, come arrest us. That's why they filed suit, so that they didn't have to hide, they didn't have to worry, all they had to do was say, protect us. Mr. Mooney believes in life, liberty, and the pursuit of happiness, and he has rights to those, unalienable rights. He firmly believes in the right to religion. The government itself agrees with Mr. Mooney, and when they pass the Religious Freedom Act, saying that the government has an affirmative duty to protect and preserve Native Americans' exercises of religion, and even possession of sacred things, such as sacraments, there's no doubt. Does the government have a duty to protect and preserve? Yes, they went so far as to codify it. Not often does the United States government want to educate people as to how it's going to treat you, and actually pass a law that says, here's what our official policy will be, but they did here, because they didn't want any confusion. So, our fourth question, did the government protect and preserve the Native American religious exercises in this case? No. We told them, you've seized the sacrament, please return it. Their response is, no, we're not going to, we're going to destroy it. We sued them seeking injunctions and declaratory relief. They fought that. They didn't even want that to go to court. I believe what the government fears is, should this case prevail, then they won't be able to say anymore that there's no religion that can legally consume cannabis, because that's what they say now. And what's weird, Your Honor, and I mentioned this in my brief, I was Orwellian, whenever a non-Native American church sues, or is being charged with a crime and uses it as a defense, that, well, they use cannabis, and the Native Americans use peyote. And they always argue, well, if the Native Americans can use peyote, shouldn't we be allowed to use cannabis? And the government, at every instance, says, well, the Native American and the Native American church are special. We have a special political relationship with them, and that's why they get to do things that you don't. But in this case, we decided to put the cart before the horse. It's not about, well, if the Native Americans get to use peyote, why can't we use cannabis? The question is, if the Native Americans use peyote, why can't the Native Americans use cannabis? And that's the issue before you. Are you going to want to reserve some time? I think you probably ought to. I think I should. Can I ask one more question? Of course. Apparently, on prudential grounds, the district court determined that you had failed to provide, and the district court indicates a laundry list of precise details of any injunction or declaratory relief. You didn't show who was going to cultivate the cannabis, all of that stuff. Did you ask for an opportunity to amend or to respond to that? Your Honor, I think what the district court said was the concrete plan that we said, which was, quite frankly, daily use plus lunar cycle sweat lodge use, which to me can't get much more concrete than we're going to do it every day like we always have. The government decided that's not a good enough plan. We need to know when you're going to use it, where you're going to use it, who's going to use it, how much. And basically what the judge was saying is, oh, by the way, what you're doing is criminal, so give us all the information about where you're going to be committing the next criminal offense. No Miranda rights are correct. Well, if you read the dialogue between the lower court and Mr. Mooney at the first hearing, you'd see that she was very concerned that Mr. Mooney is exposing himself to arrest here, very concerned to the point of warning him sua sponte, that his actions are criminal, and even by saying I use cannabis in a federal court, you're subject to arrest. It didn't deter Mr. Mooney. In fact, it only emboldened him. Thank you, counsel. Thank you. Good morning. May it please the court. Lowell Sturgill from the Department of Justice representing the government. The district court correctly dismissed this case for lack of jurisdiction. First of all, the district court correctly held that the plaintiff's claims for a request for an injunction, barring the government from either prosecuting them or seizing any cannabis from them in the future is not right. In order to prove rightness under the case law of this circuit, the plaintiff has to show that the feared action is fairly certain and that it's imminent. We know here that both with respect to a prosecution and a future seizure, there's no such imminence can be shown because. How do we know that? I mean, apparently the federal government is using the CSA to chase around other churches on the islands for marijuana usage. Well, two points. First of all, we know that in this case because it's been now more than two and a half years since the DEA became aware of this one marijuana seizure. Nothing that's happened doesn't prove that nothing is going to happen. It proves that it's likely and that the plaintiff cannot make out a case of imminence. Let's look at the Sachs case from this court, which is really the most, I think, closest case on point. It's a case in which a plaintiff is challenging the federal ban on humanitarian aid to Iraq. And this court held that that challenge was not right. And the facts were there were two aspects to the ban on aid. One was there was a ban on travel to Iraq. And second, there was a ban on humanitarian aid. And what the court said was even though the plaintiff in the case had been prosecuted for violating the travel ban and that in the course of that prosecution, the court had become aware that the plaintiff also was violating the humanitarian aid provision, the challenge to the humanitarian aid violation was not right. But here, the church has already had property confiscated. So I think that distinguishes this from Sachs, does it not? Just trying to figure out why should appellants have to show a specific threat of enforcement when the CSA has already been enforced against them. Well, because again, the mere fact of the DEA's having obtained this package from them, at most that shows with respect to a future seizure that the government was aware. Well, how is that not? That's an actual seizure, is it not? Well, not with respect to. Well, again, the question is. Did they seize the marijuana or not? No, they didn't. Actually, what happened was FedEx pulled out the packet. And we don't know how they learned it, but they believed that the packet contained marijuana. So FedEx provided the packet to the DEA. The DEA accepted it. There's no allegation here that the DEA ever had any kind of active investigation of this or any sort of mechanism to be going out and seizing any marijuana from FedEx. What happened was apparently just FedEx on its own independently came upon a package, gave it to the DEA, and the DEA did what you would expect to do with it. It's contraband. They don't know anything about Mr. Mooney, and so they destroy it. Actually, they gave it to the Honolulu Police Department, and they destroyed it. At least seven of members of the Supreme Court would conclude that's a seizure. Right. Well, once they become, once they have it, then they have taken custody of it. But I think, again, the key here is we're trying to predict what is the likelihood in the future that something's going to happen. And you kept it. I'm sorry, but you kept it and destroyed it or whoever destroyed it because it was in violation of the CSA. Sure. So the CSA has been enforced against them. Well, again, that's true. Okay. So it's already been enforced against them. We have an actual incident where this is not in the pre-enforcement category. So if we have a seizure that has taken place and the CSA has been enforced against them, then I guess we go to the next step in evaluating this. And it looks like they have a concrete plan in terms of, or they may have an argument here for a concrete plan because they say that they're going to practice their religion by smoking the cannabis or inhaling whatever you do with the cannabis as part of their religion. And that they said they're going to do that daily. So I'm trying to figure out what more do they need to show. It looks like the administrative remedies really is not going to be very helpful to them here, if it's even allowed. So what more do they need to show at this point? Well, there's a lot in that, and I want to try to get to all of it. First, I want to go back and make clear that I'm not conceding that the CSA has been enforced against them. What the government did was consistent with and authorized by the CSA. It receives something that's contraband. It destroys it. But I don't think that amounts to an enforcement against anybody because the government, again, didn't have any reason to know who this was or that they were engaging in religious use. What's your authority for that? Well... What's your authority that that doesn't constitute enforcement? Is there a case on point? It's just the logic of the way... There's no other case on point, though, that you can say, hey, this doesn't mean enforcement. I don't think we need a case, but... They took somebody's property with no due process of law and destroyed it. And why? Because of the CSA. I wanted to make a record on that and just be clear about what our position is. I'd like to go ahead and try to get to the rest of your questions. Okay. You've been told by a supervisor, okay, go ahead. I worked in Washington. Go ahead. Okay. At some point somebody mentioned the THC ministry and the search on that church on another island. And I wanted to distinguish that because, again, as our brief explains, the THC ministry is a different church. The complaint does not allege any specifics. And the district court so found that the plaintiffs did not allege enough in terms of specific facts to justify a finding that what the THC ministry is doing is sufficient enough to what these plaintiffs are doing to draw a reasonable conclusion that just because the government moved against that church it's going to move against this church. And, in fact, if you look at our brief, we show that church is very different. First of all, there's a criminal proceeding going on against it because it's basically a fraudulent unit that's basically just using the form of religion to distribute marijuana widely. And now we don't know that that's what this church is doing, and that's a ground for distinguishing what's going on there. So that's the THC ministry case. And I'm trying to remember the rest. What else do they need to show? Pre-plan. Right. They have set forth, they said that they are trying to figure out what level of specificity is required because they say they use it every day. The cannabis or marijuana was taken, and that would suggest that they're doing what they're doing, trying to figure out what more than what they've said is required for a concrete plan. Well, what the district court said, and I think this makes sense, is the key fact they didn't put in is how much they use, how much marijuana they import, how much they cultivate, because it stands to reason that if the amount is a small amount, then it may be that the amount would fall underneath whatever level that is required to justify the use of resources, substantial uses of resources, of the government that is required to address and prosecute and go after these sorts of violations. So the key thing is amount. They didn't allege that, and that's what the district court correctly said. Now, beyond that, as I read this court's cases — So you're saying if they would have said a suitable amount, that would have been enough? That's what you're saying? The district court also made other findings that show that they did not allege enough concreteness, but that's the best one, and I don't remember the other ones. What did you say the correct amount would have been or would have been? That's your threshold. Well, I don't know what the threshold is. But, again, the fact they gave no specifics left the court without any way to know, you know, how much is enough to raise a question of concern. It's been two and a half years. I have a key fact in the case. It's been two and a half years. Nothing has happened. No seizures, no plan to seize anything, no active investigation against these people, and no prosecutions, no threat of prosecution, no letters, no communications from the U.S. Attorney's Office, no communications from the DEA, nothing. That's all well taken. I appreciate that. But there has been one seizure, and so do they live in threat of another seizure? And that's the question here, and they do seem to have some sort of plan. You're saying that because the amounts with the district court said that that's not enough. Let's say it is enough. Let's say we find that it is enough. Can we go forward then at that point in time? I think we've been through this, and maybe I'm just not saying it well. But our position is, okay, there's been a seizure. What were the circumstances of that seizure? What does that tell us about the risk of a prosecution or a seizure in the future? That's why the facts of this seizure are critical. It was not a seizure by the DEA in the first instance. There was no investigation against these people, no sort of effort to go out and have a dragnet or have DEA people at the airport engaging in any sort of seizing activity. It happened by FedEx just pulling it offline for reasons we don't know why they did that. And apparently it hasn't happened again in two and a half years. So, okay, what does that tell us? That tells us that this is unlikely to happen again. At least, I mean, the law says it has to be fairly certain. That's the standard. They can't meet that, and they certainly can't show any kind of imminence. And the Sachs case is your best guess. I'm not really impressed by the Lyons case, the chokehold case, because there's nothing that shows that the guy's going to go out and perform whatever it is, whatever the acts were that got him choked before. But this is a case where I think it's very different. These people use this apparently on a regular basis. But the Sachs case is your best case. You're saying in that case that penalties had been actually imposed previously on matters involving Iraq, and so even under those circumstances it wasn't ripe when the people said, and we're going to continue to do this. Right. Although, to be fair, the penalties were for violating the travel ban as opposed to what the suit was about. That was the humanitarian aid ban. But again, they did impose a penalty, the government did impose a penalty on violating the travel ban. And in the course of that, the government became aware that they also were violating the humanitarian aid ban. And as it transpired, there was no act to prosecute that crime. What about the failure to exhaust? You make that argument, the other side says, are you kidding me? The government's just waiting with a big battle axe to chop us up. Why do you force us to go into that box canyon? RFRA requires a case-by-case, fact-specific inquiry. That's what the Supreme Court held, you know, centro. And that's what would happen if these plaintiffs were to submit an administrative request under the department's RFRA guidance for an exception. There would be a fact-specific inquiry about what sorts of intended uses they have, how much they want, what are the parameters that they seek. The bonafides of the request. Bonafides of the request, and also, I have to say, what's the nature of the drug they want to use. Now, we know from the case law, the cases have all unanimously held that RFRA does not create any religious right to use marijuana. And the major reason why that's the case is that there's a nationwide market for marijuana in ways there is not for peyote or hosca, which was the drug before the Supreme Court. So certainly they would face a high burden and a high standard to achieve any sort of administrative relief. But they haven't even tried. Was that done in the peyote case? I think there was some reference that they didn't have to do that in a peyote case. So why would they have to do that here? I'm not sure that any court, or maybe you know, court has ever required an entity to apply for an administrative exemption to the CSA before considering a RFRA claim. Sure. Well, for years there was a specific regulation that allowed members of the Native American church to use peyote, subject to a number of restrictions, regulatory restrictions, that do the best the government can to make sure that this doesn't become a problem. That is now a matter of statute. Congress codified that. And that's why people don't need to use this RFRA guidance to seek an exemption for why members of the Native American church don't need to use the RFRA guidance to seek an exemption for peyote use. But that, of course, doesn't apply here. But if I could, I think, again, Your Honors, the whole point of this court's test in rightness, there are several factors the court looks at, concrete use and history and whether there's been a specific threat. But those are all pointing toward the same central underlying findings the court has to make. Has there been a fairly, is there a fairly certain possibility of prosecution or seizure? That's from the Thomas case, which is actually this court's in-bank ruling. It's the latest in-bank judgment on rightness. And then is it imminence? Is this really something that requires court review? And they can't satisfy either one of those here for the reasons that we've laid out and the district court found. I should go on, I think, probably to the other claim they make, which is for return of the cannabis. They, first of all, conceived, as I understand it today, as they did in their briefing in the district court, that they can't get any money for this that's barred by sovereign immunity. And it's not before the court anyway because they waived it. So then the question is, can they substitute marijuana? And the district court correctly found that they couldn't for a variety of practical reasons. First is the amount of cannabis that was seized from them was not weighed. So we don't even know how much we're talking about. And their answer to that is, well, you know, we'll take anything. Just, you know, anything would be better than nothing. But there's no case law that suggests that when you don't even know what the amount is you're dealing with, that there's some minimal level that, I mean, is it one ounce or? I'm surprised FedEx doesn't have computer records of the shipment, exactly how much it weighed, because that's how they determine how much to charge. Well, if they do, it's not on the record. There is a FedEx air bill, and in the air bill, the person who sent the marijuana estimated the weight of the packet as being five pounds, I think. But the marijuana came in Tupperware containers, and I'm sure that was. . . So that's not a reliable grounds upon which to know actually how much we're talking about. DEA kept no records of how much it destroyed? It did not. The only fact, the only document in the record that addresses this at all is page three of the supplemental excerpts of record. The Honolulu Police Department form that authorized and reflected the destruction of the marijuana. I also wanted to mention, I believe if I heard it right, my friend said that the government destroyed the cannabis after the suit was filed, and if that's what he said, that's not correct. Would you concede that if the exact weight were there, that you would have to give that exact weight back in an equivalent amount of cannabis? Well, we would not, because the fact is that the government doesn't maintain any sort of repository of marijuana to be given out to people who allege wrongful seizures. And so what we're left with is seizures from other people, and whether that may be laying around at the time that it could be given away. But the problem with that, one of the problems with that, is that we don't know the potency of what that would be, nor do we know what kind of contaminants might be contained in any marijuana packet that's seized from anybody. It could have mold in it or pesticides, other chemicals, any kind of matter that could be very dangerous to somebody who's given out to. So the government would never warrant giving. Do you know why the CSA has never been enforced or is not being enforced against this church? Is it a basic question of desuetude and people just have other things to do, or has there been a conscious decision not to enforce? I'm not 100 percent sure. I think the best way to answer... I'm 80 percent sure. I think the best way to answer... I'll try to give you a real answer to that. I think that the use by this church has not been viewed as a substantial enough risk to justify the cost of the resources that it would take to address this. Now, the DEA did become aware, specifically aware, of the use by this church when the DEA received this packet from FedEx. And at that point, they certainly were faced, in a real-world sense, with a decision about what to do. And they chose not to do anything. Are there any internal memos that talk about that? I don't believe there are. That doesn't mean there aren't. That just means you don't believe there are. Well, I had a discussion with my contact at the DEA about this, and she didn't say that there were any memos in existence. Some of this I sort of want to be careful about, because I think it may involve attorney-client privilege and that sort of thing. But as far as I know, I have had this discussion, and there's no active enforcement, no active investigation. There's nothing active. The district court, in fact, found that based on this form, which is in the record, that the case against... I can't pronounce the name. The case against them based on... or the investigator, whatever there was against them based on this form has been closed. Once this was destroyed, there's no evidence that the DEA or Honolulu Police Department retained any part of it that could be tested and used against them as evidence. It destroyed all of it. So basically, that's just over. And I think that, again, is the basic problem with this suit. We have one seizure, not even by the DEA, although the DEA received it, of course, that happened more than two-and-a-half years ago, not as a result of any investigation, any action, any concern about this particular group's use. Ended up in the DEA's hands. Drugs were destroyed. Nothing's happened since. Nothing. No active investigation. They say they want to know what a threat is. Well, there are examples of threats in the cases cited. There's the Steffel v. Thompson case from the Supreme Court is one, and the Ripleton case from the circuit where a prosecutor warns somebody of a potential obscenity charge if they kept distributing hardcore porn. There's no threats here by the U.S. Attorney's Office or the DEA, nothing. So you're left with basically the fact that there's a statute. The statute makes what they're doing illegal. But this Court's cases, Sachs, Thomas, and on down say that's not enough. Thank you. Thank you, Your Honor. Thank you. So I just want to be clear. You do concede then at this point that you're not entitled to monetary damages under RFRA? No, we don't concede that whatsoever. We concede that we're entitled to appropriate remedy under RFRA. That is up to the trial court. There's never been a trial in this case. But you said in your argument just previously that you know you can't get money damages because of the sovereign immunity. We're asking for compensation for the seized property. If it's determined that there was a right to the property and it was taken without due process, then the takings clause comes into play, not sovereign immunity, and they can be compensated. So we haven't conceded. Did you argue that before? No. That's for trial, Your Honor. We haven't established the right to the cannabis yet. Okay. Once that's happened, see, this is the problem with the case. The government wants the church to shush up and go home. Stay under the radar. Because, you know, if you're manini, which in Hawaiian means small, we're going to let you slide. We could confiscate your cannabis any time we want and destroy it completely, and you'll have no recourse to get it back, mind you. But just be glad you're not getting arrested. Now, when a church gets a little bigger or perhaps comes up from under the royale, like Roger Christie's church in Hilo, suddenly the government says, well, you know what, we're going to investigate and we're going to raid and we're going to imprison cannabis users for their religious use. So what's your appropriate remedy? What do you submit? In this case, the appropriate remedy under RFRA is an injunction against enforcement of the CSEA, just like they have enforcement against the use of peyote, and a declaratory order saying that this church is allowed to consume cannabis and you cannot arrest them, therefore they shouldn't waste their resources. Even though they're saying they're not going to, it's nice to have an order that says they can't. Because you'll never know when that imaginary radar screen is going to pop up. And suddenly the church... You have very limited time and I want the answer to my question. Certainly. So you're not seeking monetary damages or, at this point in time... Incorrect. The First Amendment complaint stands as it is. We are seeking everything that's in that complaint, including what we want is the cannabis back, but they destroyed it. And yes, Your Honor, they destroyed it after. This case was filed on July 22nd. Their supplemental excerpt of the record at page 3 shows September 15th, 2009. The HPD destroyed it. So, despite counsel's inawful argument, the facts say differently. They destroyed it after soot was brought. So, Your Honor, what we're seeking is quite clear. The injunction and the declaratory relief are the primary concerns. The secondary concern, and it was only added in the amended complaint because it's not even that big a concern, is the return of the cannabis. Now, when he mentioned that there's no evidence in the record, he's wrong once again. There's three evidences in the record, Your Honor, that talk about this cannabis. Attached to the affidavit of Michael Rex and Brady Bear Mooney is the actual air bill from FedEx that shows the weight. Okay? That's one record. In that affidavit, it also talks about what he heard the weight was, which was a pound. And that's also in the amended complaint. And then, Your Honor, in the third record, the HPD department in the supplemental excerpt showing plastic container containing green vegetable and rosetta. Now, the fact that they decided under quantity to put one, you know, I can't tell you what one means. But they had every opportunity to know what it was and weigh it. Plaintiff's appellate should in no way be punished for prejudice because of their inartful use of the number one. Counsel on the other side says the Sachs case may be the closest case to this case. That case was cited in their red brief. You don't address it in the gray brief. Do you have anything to say to us about the Sachs case? In opposite, facts aren't even close. The ruling of law is not close. This is a case where, as I mentioned, he doesn't even have to be, the church doesn't even have to have cannabis seized in order to seek relief under RFRA. There was a seizure. There was enforcement. And as I mentioned in my opening, the biggest problem we have here is the threat of enforcement and the you stay under the radar and you're okay. You start talking about what you do and becoming big, and we'll put you in jail without a trial just like Roger Christie. That's the issue, Your Honor. Thank you very much. All right. The argument for your argument here today, and we'll take the matter under advisement. Thank you. We'll be in recess.
judges: Goodwin, Trott, Murguia